## INGALLS v. ATWOOD ET AL.

1. **Deed:** INTENDED AS MORTGAGE: CONSIDERATION. Evidence considered which was held to establish the fact that a conveyance, absolute on its face, was intended as a mortgage, and that an instrument subsequently executed by the parties in relation to the property conveyed was void for want of consideration.

*Appeal from Delaware Circuit Court.*

THURSDAY, APRIL 8.

The defendants, husband and wife, conveyed, by deed absolute on its face, certain real estate to the plaintiff. The object of this action is to recover the amount of money which constituted the consideration of the conveyance, have the same declared a mortgage, and to foreclose. There was a trial to the court, and the relief asked by the plaintiff having been granted, the defendants appeal.

*G. Watson,* for appellants.

*Peters & Heath,* for appellee.

SEEVERS, J.—On or about the 10th day of June, 1873, there was an accounting between the plaintiff and the defend-

1. DEED: intended as mortgage: consideration.

ants, or one of them, and it was then agreed the latter were indebted to the former in the sum of $1,645.18. On that day the defendants executed and delivered to the plaintiff a conveyance of certain real estate, which was absolute on its face. A few days thereafter the plaintiff executed and delivered to the defendants a written instrument which showed the conveyance to be conditional instead of absolute. This writing is dated on the same day the conveyance is, contains mutual covenants, and is executed by both parties. It is agreed, however, on all hands, such writing was not executed until several days after the conveyance had been delivered to the plaintiff. As to the main fact whether the conveyance was in fact a mortgage, the witnesses for the plaintiff are Col. Peters and herself, and the defendants, on their part. These witnesses pointedly and directly contradict each other, time, and time again, as to almost every material matter, in strong and unmistakable language. Some one or more of these witnesses are mistaken, to use no stronger expression. Under such circumstances we must endeavor to arrive at the truth as best we can.

The theory of the plaintiff is that the defendants were in pressing need of $500, to discharge liabilities that must be paid, a portion immediately and the residue soon, and being unable to obtain said money elsewhere they applied to the plaintiff to loan them that amount, and they would secure the same and also the $1,645.18, by mortgage on the real estate conveyed. To this the plaintiff consented, but instead of taking a mortgage it was suggested by Col. Peters to both parties that a conveyance absolute on its face had better be made, so that if the land should be attached by creditors of the defendants the plaintiff would not be at the expense of foreclosing; both parties agreed to this, and it was done. The plaintiff also claims that the defendants represented if time could be procured they could eventually pay their debts.

The theory of the defendants is that they sold conditionally, and the plaintiff purchased the real estate, the $500 being a part of the purchase-money. The defendants claim that they informed the plaintiff they were bankrupt, and the best they could do was to let the plaintiff have the real estate at the price agreed upon, but believing it to be worth more than such sum it was agreed they should have possession thereof for a fixed time, with the privilege of selling, and thus or otherwise discharging or paying the consideration money.

The first question to be considered is whether the writing is valid and binding on the plaintiff. That it was not executed until several days after the conveyance is conceded, as we have said, by both parties. But the defendants testify that it embraced no more than had been orally agreed when the conveyance was made, and that it was executed in pursuance of and in strict accord with the contract; that it was not executed at the time the conveyance was for the sole and only reason that Col. Peters did not have time to draft it. On the other hand Col. Peters and the plaintiff testify that nothing was said about such writing, nor was any such agreement as therein contained made at the time or previous to the execution of the conveyance. In short, they testify no such contract was at any time made, and that the writing was executed under the following circumstances, as stated by Col. Peters in his evidence. Within a day or two after the deed had been delivered "Mr. Atwood requested me to see Mrs. Ingalls and urge her not to put the deed on record, for the reason that his creditors would see it, and believe he had sold the farm; and not paid them; that they would be likely to give him trouble. * * * After some further talk on the subject I told Atwood that I would draw up an article of agreement between him and Mrs. Ingalls, showing he had possession and the right to sell the same," which would probably answer his purpose. Thereupon the writing was executed, but it contained not only the foregoing provis-

ions, but others showing that the defendants were mere ten-ants of the plaintiff.

We think the probabilities as to this writing are as claimed by the plaintiff, and that while it was agreed in the oral con-tract the defendant should have the possession of the farm, and the right to sell within a specified time, that it was not agreed nor understood the sale to the plaintiff was either abso-lute or conditional, and that the stipulations in the writing to this effect are without consideration and not binding on the plaintiff. The reason given for the delay in the execution of the writing by the defendants is not satisfactory. Accord-ing to the plaintiff and Peters the contract was to exist only in parol. But the defendants insist the writing was executed in accordance with the contract; it was, therefore, important it should have been executed at the same time. Our conclu-sion that the provision showing a conditional sale contained in the writing was not a part of the contract is aided by a statement of fact contained therein. On the defendant's theory the $500 was a part of the purchase-money, but the writing speaks of it as money " to be advanced by " plaintiff " from time to time as they may agree." ' This is clearly inconsistent with the thought that such money constituted a part of the purchase price of the farm; if it did not, then the whole theory of the defendants falls to the ground.

There is a fact or two which are undisputed when considered in connection with the evidence of Mr. Eddy, which we cannot doubt, that to our minds shows pretty conclusively which of the theories of these parties is probably correct.

The defendants were indebted, as we have seen, to the plaintiff in the sum of $1,645.18; of this sum $1,297.65 was, as we conclude, reasonably secured; only $347.53 was unse-cured. There was a mortgage on the farm for $1,000, and the plaintiff agreed to let the defendants have $500 more money; so that if the transaction amounted to a purchase of the farm, she paid therefor $3,145.18 at least, besides the rents and profits for eighteen months, which would amount

to at least $500 more. Nor did she have anything but the defendant's personal obligation to pay the taxes, and interest on the prior mortgage for the period he was to remain in possession. As to the value of the farm, the evidence, as is usually the case, differs widely. This, however, is immaterial, because during the negotiations what its value was was suggested, and that the plaintiff declined to purchase on more than one occasion the defendants admit, and for the purpose of ascertaining its value she consulted Mr. Eddy, by whom she was informed its outside value was $2,500. The plaintiff had no personal knowledge on the subject, and there is no evidence tending to show she consulted with any one else.

Under these circumstances what motive or inducement could there have been which would influence the plaintiff to purchase the farm. She was giving $600 or $1,000 more, if rents are estimated, than it was worth, as she had been informed, and had only the promise of a bankrupt, on defendant's theory, to pay rents and taxes. The only possible motive was to secure about $350 that was unsecured. The farm was not good security for the indebtedness, and the only solution of the plaintiff's conduct must be found in the fact that, as she and Peters testify, she did not know the defendants were bankrupt, but believed that they would be able to pay their debts if time was given. But besides this, that the plaintiff had confidence in the defendants is evidenced by loans of money made from time to time without security. They were intimate socially, and could be properly classed as friends. The negotiations were commenced by the defendants, and they solicited Col. Peters to see the plaintiff and endeavor to get her to make a satisfactory arrangement. Peters has no pecuniary interest in this controversy, and his evidence on the whole is strongly against the defendants.

Taking all the evidence together, we conclude the preponderance is with the plaintiff, and that so much of the decree below as so holds is correct. In arriving at the amount due, the court below computed interest at ten per cent. There is

no written contract to this effect, except the writing making the conveyance a conditional one, and upon which the defendants rely to show the transaction to have been a conditional sale. We have found this writing was void as to the plaintiff for want of consideration; it must be so held as to the defendants. The plaintiff cannot repudiate and at the same time claim benefits and advantages from such writing. So much of the decree as allows ten per cent on the amount of the indebtedness, and renders judgment for the same rate of interest, is erroneous. In all other respects it is affirmed. The cause is remanded to the Circuit Court, with directions to ascertain the amount due, and render judgment in accordance with this opinion.

MODIFIED AND AFFIRMED.